UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

ACCEPTANCE INSURANCE COMPANY,
FIDELITY AND GUARANTY INSURANCE
UNDERWRITERS, INC., GEORGIA
CASUALTY & SURETY COMPANY, AND
UNITED STATES FIDELITY AND
GUARANTY COMPANY                                              PLAINTIFFS

VS.                                   CIVIL ACTION NO. 4:04CV133LN

POWE TIMBER COMPANY, INC.,
AMERICAN WOOD, A DIVISION OF
POWE TIMBER COMPANY, INC.,
WILLIAM A. POWE TRUST, WILLIAM
A POWE, TRUSTEE, AND WILLIAM A.
POWE, JR.                                                     DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on separate motions for

summary judgment filed by plaintiffs United States Fidelity and

Guaranty Company (USF&G), Georgia Casualty & Surety Company

(Georgia Casualty) and Acceptance Insurance Company (Acceptance).

Defendants American Wood, Powe Timber Company, Inc., William A.

Powe Trust, William A. Powe, Trustee, and William A. Powe, Jr.

(collectively Powe) have responded in opposition to the motion and

the court, having considered the memoranda of authorities,

together with attachments, submitted by the parties, concludes

that each of plaintiff's motions is well taken and should be

granted.

This case presents an insurance coverage dispute.

Plaintiffs, who provided liability insurance coverage to Powe at

various times from 1980 through 1998, filed this suit seeking a declaratory judgment that they have no defense or indemnity obligations to Powe in connection with a number of personal injury lawsuits that have been recently filed against Powe and which are currently pending in state and federal courts throughout Mississippi. Those lawsuits involve negligence, breach of warranty and products liability claims based on allegations that the plaintiffs therein, who collectively number around 1,000, were harmed by their exposure to hazardous chemicals in wood chips sold or given to them by Powe.

As regards Powe, these plaintiffs allege that following its 1980 purchase of a wood treatment plant in Richton, Mississippi from Joslyn Manufacturing Company, Powe operated the plant to manufacture industrial wood block flooring.[1] The plaintiffs allege that Powe used a number of hazardous chemicals for treating the wood used in the manufacturing process, and that once that process was completed, Powe discarded damaged or odd-sized wood chips either by burning them or disseminating them to the general public for purposes of consumption, including but not limited to use as a form of heating and/or cooking fuel. Those plaintiffs claim they suffered harm when they handled the wood chips and/or

---

[1]      Those plaintiffs also sued Joslyn, which had operated the Richton plant from 1964 to the date of the sale to Powe on April 1, 1980.

inhaled fumes from the unburned wood chips and/or inhaled fumes from the wood chips as they were burned.

The plaintiff insurers herein have moved for summary judgment, contending that they have no duty to defend or indemnify under their policies, on either or both of two bases.  First, they contend that the losses claimed by the underlying plaintiffs were not caused by an "occurrence" and hence do not fall within the coverage of the policies.  They further maintain that even if the losses could be found to have resulted from an occurrence, policy exclusions, namely, the pollution exclusion or exclusions in the various policies, clearly apply to preclude any potential for coverage.  In the court's opinion, plaintiffs are correct on both counts.

"Mississippi has adopted the 'allegations of the complaint' rule (sometimes referred to as the eight-corners test) to determine whether an insurer has a duty to defend," pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy.  Ingalls Shipbuilding v. Federal Ins. Co., 410 F.3d 214, 225 (5th Cir. 2005).  In so doing, the court compares "the words of the complaint with the words of the policy, looking "not to the particular legal theories" pursued by the plaintiffs, "but to the allegedly tortious conduct underlying" the suit.  Id.

3

(citations omitted).  <u>See also</u> <u>United States Fidelity & Guarn. Co.</u>

<u>v. Omnibank</u>, 812 So. 2d 196, 200 (Miss. 2002).  If the complaint

alleges facts which are arguably within the policy's coverage, a

duty to defend arises.

Turning, then, to the complaints in the underlying lawsuits,

the plaintiffs therein allege that they were "sold . . . toxic

wood chips for use as firewood by defendants," and that, "with the

full knowledge and approval of the management of defendants,

[those wood chips] . . . were sold to the public to be used as

firewood for heating and cooking."  The complaint goes on to aver,

more specifically, the following:

> After the wood treatment process was completed, the odd
> shaped cracked or spare chemically treated wood chips
> were put in stacks at the plant and sold as byproducts
> to the unsuspecting public, including the plaintiffs.
>     Defendants . . . negligently, and with reckless
> disregard for the safety of others, caused or permitted
> the chemically treated wood chips to be sold as
> production byproducts to plaintiffs with the knowledge
> that the plaintiffs would be exposed to the toxins
> therein by breathing the fumes of the unburned wood
> chips, handling the wood chips, and burning the wood
> chips in their homes as heating and cooking fuel.
> Moreover, defendants profited from this activity.  The
> defendants sold the chemically treated wood chips to
> Charles Reid by the truckload.  Charles Reid then took
> the chemically treated wood chips to Jasper County,
> stockpiled the chemically treated wood at his store in
> Heidelberg, Mississippi, and sold the chemically treated
> wood to plaintiffs to use as firewood in their homes.
> Other plaintiffs purchased the chemically treated wood
> directly from the plant.
>     Although the defendants knew or should have known
> that the treated wood chips [posed a serious danger to
> health if handled without gloves or other protection or
> if the fumes from the wood chips were inhaled or if the
> wood were burned, especially in closed areas], the

4

defendants never warned plaintiffs of any of these
dangers. . . .

Looking now at the policies issued by the plaintiff insurers to
Powe, all of the subject policies have similar insuring provisions
which condition coverage on the claimed losses having been caused
by an "occurrence."  Though the definitions of "occurrence" under
the policies vary slightly, they all define "occurrence" as an
"accident."  The USF&G policies in effect prior to 1988 and the
Acceptance policies define "occurrence" as "an accident, including
continuous or repeated exposure to conditions, which results in
bodily injury or property damage neither expected nor intended
from the standpoint of the Insured."  The subsequent USF&G
policies, as well as the Georgia Casualty policy, define
occurrence as "an accident, including continuous, repeated
exposure to substantially the same general harmful conditions."

According to Mississippi law, there is no "occurrence" under
policies which define "occurrence" as an "accident" if the harm
for which recovery is sought from the insured resulted from an
insured's intentional or deliberate actions, even if the insured
did not intend such harm.  It is further settled under Mississippi
law that an insurer's duty to defend under a general commercial
liability policy for injuries caused by accidents does not extend
"to injuries unintended by the insured but which resulted from
intentional actions of the insured" even if those actions were not
intentionally tortious but rather only negligent.  If the acts

5

themselves were not accidental, even if they may have been negligent, then there is no "occurrence." See United States Fidelity & Guarn. Co. v. Omnibank, 812 So. 2d 196, 197 (Miss. 2002) (holding that "an insurer's duty to defend under a general commercial liability policy does not extend to negligent actions that are intentionally caused by the insured," or, stated another way, that "even if an insured acts in a negligent manner, that action must still be accidental and unintended in order to implicate policy coverage"); see also ACS Const. Co., Inc. of Mississippi v. CGU, 332 F.3d 885, 890 (5th Cir. 2003) (holding there was no coverage for claims in underlying suit that contractor had been negligent in installation of waterproofing membrane to the roofs of munitions bunkers as a result of which they leaked, because "even though the installation of the membrane was done negligently, the action of installing the membrane was not accidental nor unintended to implicate coverage under the policy"); Allstate Ins. Co. v. Moulton, 464 So. 2d 507, 510 (Miss. 1985) (holding that in determining whether there had been an occurrence, "[t]he only relevant consideration is whether, according to the declaration, the chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force").

6

For its part, Powe acknowledges that this precedent establishes that it is the nature of the act as opposed to the expectedness of the resultant injury that controls the analysis of whether there was an "occurrence." Powe implicitly acknowledges, as well, that the underlying complaints do allege acts which cannot be categorized as accidental, more particularly, the allegation that Powe sold or gave wood chips to the plaintiffs for use in cooking and heating their homes. It is, in fact, manifest that to the extent the complaints make such allegations, they undeniably involve intentional acts by the insured and thus do not implicate coverage under the subject policies.

Powe argues, though, that the complaints allege additional acts which are appropriately categorized as unintentional. In this vein, Powe points out that in addition to the allegations that Powe sold or gifted the wood chips to the underlying plaintiffs, the underlying complaints also charge that Powe sold wood chips to Charles Reid, who in turn, sold the wood chips to some of the underlying plaintiffs, and that in selling the wood chips, Powe never warned Reid or any plaintiff of the danger posed by the wood chips. Powe suggests that because these allegations involve intervention by a "third force," and/or a _failure_ by Powe to act (as contrasted with an affirmative, volitional act), these allegations create the potential for coverage. The court concludes otherwise.

7

The allegation that Powe sold wood chips to Charles Reid, who in turn sold them to the plaintiffs, does not alter the original, intentional nature of Powe's act.  Powe's argument that Reid's role in the distribution somehow renders Powe's actions other than intentional apparently derives from the Mississippi Supreme Court's remark in Moulton that the only relevant consideration in determining whether there has been an occurrence is whether "the chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force."  Moulton, 464 So. 2d 507, 509 (Miss. 1985) (emphasis added).  Plaintiffs seem to reason that Reid's actions amounted to the "intervention of [a] third person." However, it is clear from the allegations of the underlying plaintiffs that Reid's "intervention" was not unexpected at all. In fact, plaintiffs in the underlying suits unambiguously charge that Powe sold the wood chips to Reid with the knowledge and expectation that they would be resold to members of the public for their use.

Powe's further argument that the underlying plaintiffs' allegation that Powe "failed" to warn plaintiffs of the dangers posed by the wood chips involves conduct which may fairly be characterized as "unintentional," and hence, an "accident," and hence, an "occurrence," does not withstand scrutiny.  While the

8

notion of a "failure" or "omission" intuitively may seem less
intentional than an overtly affirmative act, logic does not bear
this out.  Here, Powe's failure to warn is just as intentional,
i.e., not "accidental," as its affirmative act of selling or
gifting the wood chips.  See Continental Cas. Co. v. Synalloy
Corp., 667 F. Supp. 1563, 1577 (S.D. Ga. 1986) (observing that
"while the underlying complaints include as one cause of action
the insured's 'failure to warn' its employees about the alleged
known defect in its product, . . . that allegation describes an
intentional act on the part of the insured, thereby excluding it
from coverage in accordance with the definition of 'occurrence' as
an 'accident . . . neither expected nor intended from the
standpoint of the insured'").  For these reasons, the court
concludes that the claims in the underlying lawsuits do not
involve losses caused by an "occurrence" and hence do not create
the potential for insurance coverage under the subject policies.
Accordingly, based on the allegations in the underlying actions,
there is no duty to defend or indemnify Powe under the policies
for these claims.

     Powe submits, however, that this conclusion does not end the
court's inquiry, because while the court is usually limited to the
allegations of the underlying action in assessing whether there
exists the potential for coverage, and thus a duty to defend, an
exception to that rule applies here:  "[A]n insurer has a duty to

defend when presented with extrinsic facts, of which the insurer has knowledge or could obtain knowledge by means of a reasonable investigation, that trigger coverage under the policy." Ingalls Shipbuilding, 410 F.3d at 225 n.17; see also American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551 ( 5th Cir. 1998) (while general rule is that insurer's duty to defend hinges on allegations in complaint, narrow exception imposes duty to defend upon insurer who has knowledge, or could obtain knowledge through reasonable investigation, of existence of facts that trigger coverage).  In the court's opinion, the exception does not apply here to give rise to a duty to defend.

Powe notes in support of its position on this issue that it has consistently denied that it ever sold or gave treated wood chips to anyone, and has further maintained that it never gave anyone permission to take treated wood chips from its property. In this vein, representatives of Powe have testified by deposition that treated wood blocks which were rejected by Powe because they were broken or otherwise damaged were considered hazardous waste by Powe and were never sold or given away.  These witnesses explained that for a period of time after purchasing the Richton facility in 1980, Powe disposed of these wood chips by simply dumping them on the facility grounds.  Around 1986, however, the EPA directed Powe to discontinue that practice and for a period of about ten years after that time, Powe had a contractor haul the

10

piles of treated waste wood away to a licensed disposal facility in Alabama.  Then in 1996, Powe started disposing of these wood chips by placing them in a dumpster on the facility grounds, to be picked up periodically by Waste Management and transported to an offsite landfill for disposal.  Each of these Powe witnesses asserted that while rejected "white" wood chips, i.e., untreated wood chips, were sold to members of the public, none of the treated wood chips were sold or given away and, despite evidence suggesting that some of the underlying plaintiffs may have picked up treated wood chips from piles located near the public road that runs through or along Powe's property, none of the Powe witnesses was aware of anyone having obtained such wood chips from Powe or from its property.

Powe argues that when the determination of the insurers' duty to defend is made by reference to <u>these</u> facts, which it submits are the "true facts," then there does exist the potential for coverage, notwithstanding the underlying plaintiffs' allegations that Powe acted intentionally in selling or giving away treated wood chips.  As Powe puts it, if, in fact, it did not sell or give the wood chips away and did not give anyone permission to take wood chips from its property, then "how can it be said that Powe acted intentionally?"

<u>Mavar Shrimp & Oyster Co. v. United States Fidelity & Guaranty Co.</u>, 187 So. 2d 871 (Miss. 1966), was one of the first

11

cases in Mississippi to consider whether an insurance company had a duty to defend where the complaint alleged facts that did not come within the coverage of the policy but the insurer knew, or could have known by a reasonable investigation, that the allegations were false.  There, the plaintiff in the underlying suit alleged he was an employee of the defendant/insured and sought to recover damages for injuries he sustained while on the job.  The liability policy at issue contained an exclusion for the insured's obligations under any worker's compensation law, so that if the duty to defend had been determined by reference to the allegations of the underlying complaint, the exclusion would have applied and there would have been no potential for coverage.  The insurer was aware, however, of the insured's position, which it had successfully vindicated in similar cases, that the underlying plaintiff was <u>not</u> its employee.  The court concluded that under those circumstances, the insurer had a duty to defend because the facts claimed to be true by the insured presented the potential for liability of the insured to the underlying plaintiff and created the potential for coverage.  The court stated,

> Where [the] complaint fails to state [a] cause of action
> covered by [the] policy, but [the] insured informs [the]
> insurer that true facts are inconsistent with complaint,
> or insured learns from independent investigation that
> the true facts, if established, present potential
> liability of insured, [the] insurer must defend until it
> appears that facts upon which liability is predicated
> exclude insurance coverage.

12

Id. at 875 (quoting Crum v. Anchor Casualty Co., 264 Minn. 373, 119 N.W.2d 703 (1963)); see also Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 719 (Miss. 2004) (stating that "an insurer does have a duty to defend where a complaint fails to state a cause of action covered by [the] policy but the insured informs the insurer that the true facts are inconsistent with the complaint").

Where the insurer has notice, either from its insured or from its own independent investigation, of "actual" or "true" facts which suggest that the underlying plaintiff's alleged injury is covered by its policy, then it is reasonable to require the insurer to defend its insured notwithstanding that the facts alleged in the underlying complaint do not fall within the policy's coverage.  Indeed, "'[i]f the rule were otherwise, then in order to be defended by his insurer, the insured would be required to move the court for an amendment of the pleading against him.  Surely, such procedure would not be required when the insurer is possessed of all of the facts which bear upon the coverage of its policy.'"  Crum, 264 Minn. at 389, 119 N.W.2d at 710.

Here, the "true facts" claimed by Powe, of which there is ample evidentiary support, would seem to belie a conclusion that its actions were intentional, for according to its version of the facts, it merely discarded waste wood in its own property, with no

13

knowledge or reason to know that persons would come onto its property and take those wood chips away to use in their homes.  In this scenario, Powe did not "set in motion [a chain of events] and follow[] a course [which it] consciously devised and controlled . . . without the unexpected intervention of any third person or extrinsic force."  Moulton, 464 So. 2d at 510.

     At the same time, however, these "true facts" claimed by Powe, even if established, would not seem to support a viable claim against Powe for liability in causing the underlying plaintiffs' injuries.  In other words, such a suit would have no merit, and thus, Powe's version of the facts is little more than a denial of the underlying plaintiffs' allegations and its defense to their lawsuits against it.  Notably, in the Mavar Shrimp case, the Mississippi Supreme Court held that under the "true facts" exception, a duty to defend exists only if the insured learns of "true facts," which, "if established, present potential liability of insured" and a cause of action based on those facts would be covered by the policy.  187 So. 2d at 875.  See also Tennessee Corp. v. Hartford Acc. & Indem. Co., 463 F.2d 548, 550-551 (5th Cir. 1972) (under Georgia law, which recognizes the "true facts" exception, for a duty to defend to arise, "there must be a conjunction of two elements: (1) property damage, and (2) liability therefor on the part of the insured, revealed either by the allegations of the complaint or by the required

14

investigation into the true facts surrounding the claim"); cf. American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 553 (5th Cir. 1998) (holding that an insured cannot trigger the duty to defend merely by denying the allegations in the complaint).  In sum, if the unpled "facts" would not support a claim for liability against the insured, then knowledge of these facts by the insurer does not give rise to a duty to defend. There is thus no duty to defend here as neither the facts pled, nor the "true" facts constitute an "occurrence" covered by the policy.

The court would observe, though, that even accepting Powe's version of the facts as the basis for evaluating the potential for coverage of the underlying plaintiffs' claims, it still follows that the insurers are entitled to summary judgment based on the pollution exclusions in the insurers' policies.

Each of the policies contains a pollution exclusion for bodily injury arising out of the "release or escape" of pollutants, defined to include "waste" or "waste materials," and most specifically include within this exclusion "waste" which has been "disposed of" as waste by the insured.  The Georgia Casualty, Acceptance and post-1986 USF&G policies each contain an exclusion which reads, in pertinent part, as follows:

> This policy does not apply to:
>
> (1) "Bodily Injury" or "Property Damage" arising out of
> the actual, alleged or threatened discharge, dispersal,
> release or escape of pollutants:
> * * *
> (c) which are at any time transported, handled, stored,
> treated, disposed of, or processed as waste by or for
> you or any person or organization for whom you
> may be legally responsible, or
> * * *
> Pollutants means any solid, liquid, gaseous or thermal
> irritant or contaminant, including smoke, vapor, soot,
> fume, acids, alkalis, chemicals and waste materials.
> Waste materials includes materials which are intended
> to be or have been recycled, reconditioned or reclaimed.

USF&G pre-1986 policies similarly provide:

> This insurance does not apply . . . to bodily injury or
> property damage resulting from the discharge, dispersal,
> release or escape of smoke, vapors, soot, fumes, acids,
> alkalis, toxic chemicals, liquids or gases, waste
> materials or other irritants, contaminants, or
> pollutants into or upon the land, the atmosphere or any
> watercourse or body of water, but this exclusion does
> not apply if such discharge, dispersal, release or
> escape is sudden and accidental.

In simplest terms, the treated wood chips clearly qualify as "waste materials," and the injuries claimed by the underlying plaintiffs were caused by the "release" or "escape" of those wood chips from Powe's property.

For these foregoing reasons, the court concludes that the insurers' summary judgment motions are well taken and should be granted. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 30th day of November.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

16